**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**KEY WEST DIVISION**

**Case No. 19-cr-10017-MOORE/SNOW**

**UNITED STATES OF AMERICA**

**vs.**

**DONALD HOWARD CONKRIGHT,**

**Defendant.**

_____

**MOTION in _LIMINE_ to PRECLUDE TESTIMONY REGARDING THE DEFENDANT'S MENTAL STATE PURSUANT TO RULE 403**

Pursuant to Federal Rule of Criminal Procedure 12.2(b), DONALD HOWARD CONKRIGHT (the "Defendant"), filed a Notice of Expert Testimony Regarding Mental Condition stating that the Defendant intends to call Emily Fallis, Ph.D. to testify at trial as to the mental condition of the Defendant at the time of the offense.  The United States moves in _limine_ pursuant to Federal Rule of Evidence Rule 403 to exclude the Defendant's witness because the witness would serve to confuse the issues and mislead the jury, and any such evidence substantially outweighs any arguable probative value.

Alternatively, the United States moves in _limine_ pursuant to Federal Rule of Evidence 704 to prelude the Defendant's witness from stating an opinion as to the Defendant's intent to commit the charged crimes or to state a conclusion that the Defendant did or did not have the requisite intent to commit the charge crimes, or to testify that the Defendant had the mental state or condition constituting an element of the crime.  _United States v. Alvarez_, 837 F.2d 1024, 1031 (11th Cir. 1988).  Should the Court permit the Defendant's witness to

testify, the Defendant's witness should be strictly limited to testifying regarding her observations of the Defendant, and the Defendant should be prohibited from introducing hearsay statements of the Defendant, and testimony that is wholly irrelevant to the charged crimes, is overly prejudicial, and serves only to inflame the jury's sympathy.

## A. Background

### 1. The Sophisticated Fraudulent E-mail Scheme

The victim, Crowley Independent School District in Crowley, Texas, contracted with construction company Steele & Freeman, Inc. ("Steele & Freeman") to perform construction work for the school district including building a new elementary school, the June W. Davis Elementary School.

Between October and November 2018, a group of co-conspirators executed a fraudulent scheme by impersonating a senior Steele & Freeman employee named Dena Rowland. One or more members of the conspiracy communicated with employees of the school district using an email address that closely and deceptively resembled Ms. Rowland's account, either by substituting an ".or" or a ".net" suffix instead of ".com."

By impersonating Ms. Rowland, the conspiracy successfully convinced the victim school district to wire substantial payments intended as compensation for Steele & Foreman's construction work to bank accounts controlled by the conspiracy. The total amount of diverted payments was approximately $2 million, divided between two wires of $522,588.98 and $1,473,126.54 amounts.

## 2. The Defendant's Receipt of the Wire Fraud Proceeds

Law enforcement investigated the recipient bank for the fraudulent wires and discovered the bank accounts wires had been sent to an Iberia Bank Account ending in 1139 in the name of Donald Howard Conkright.  The Defendant had opened the account on October 15, 2018.  Law enforcement obtained account records for an Iberia Bank Account in the Defendant's name with an account number ending in 1139.  The records demonstrated that the Defendant received a wire on November 13, 2018, with description of "CCD Steele & Freeman" in the amount of $522,588.98 and a wire on November 14, 2018, also with a description of "CCD Steele & Freeman" in the amount of $1,473,126.54.

## 3. The Defendant's Laundering of the Wire Fraud Proceeds

After receipt of the School District's Funds, the Defendant immediately began spending the fraudulent proceeds.  On November 13, 2018, the Defendant withdrew $7,500 and $9,500.  The next day, the Defendant sent a wire in the amount of $289,500 and conducted two additional checking withdrawals of $7,500 and $9,500.  The Defendant also sent a transfer of $750,000 to a second Iberia Bank account in his name with an account number ending in 4241.

The Defendant is charged with two specific counts of money laundering pursuant to Title 18, United States Code Section 1957.  The first charge is a wire of $128,029.87 wired by the Defendant from his Iberia Bank account ending in 4241 to Braman Motors, Inc. on November 15, 2018. The Defendant purchased a 2018 BMW M3-CS from Braman Motors in Miami, Florida.  The Defendant visited the Braman BMW car dealership, picked the car and filled out all of the

paperwork. He is captured on Braman's security system. During a post-*Miranda* audio and video-recorded interview, the Defendant told law enforcement that his co-conspirator told him he could purchase a car and that he wanted a BMW.

On November 16, 2018, the Defendant transferred $69,205 of wire fraud proceeds from his Iberia Bank account ending in 1139 to Kirk Jewelers, Inc. in Miami, Florida. Kirk Jewelers also captured the Defendant on its security footage in the store, conducting the purchases. During the post-*Miranda* audio and video-recorded interview, the Defendant told law enforcement that he thought the watches might be for him as a "wedding gift," but that he ultimately sent the watches to Dubai.

The Defendant is also charged with concealment of the wire fraud proceeds pursuant to Title 18, United States Code, Section 1956(a)(1)(B)(i). On November 14, 2018, the Defendant wrote a check to Intertech Trading in the amount of $72,008.00 from his Iberia Bank Account ending in 1139. The check was for payment of computers by Techtrust Integrated Services, Ltd. The computers were sent to Nigeria.

Between November 13 and November 18, 2018, the Defendant traveled to five different Iberia Bank locations in the Florida Keys, Homestead, Dadeland, Coral Gables, and Miami to conduct cash withdrawals, send wire transfers, complete cashier's checks for approximately $665,000. He also purchased more than $13,000 worth of merchandise from the Apple Store.

**4. Procedural History and the Defendant's Notice of Expert**

A Grand Jury indicted the Defendant in the Southern District of Florida on September 26, 2019 for one count of conspiracy pursuant to Title 18 United States Code, Section 371.  The Grand Jury indicted the Defendant on January 24, 2020, in a superseding indictment for conspiracy to commit money laundering, and money laundering.  The Court arraigned the Defendant on the Superseding Indictment on January 27, 2020.

On February 5, 2020, the Defendant filed a notice of expert testimony. (DE No. 22).  The Defendant has not filed a notice or otherwise provided notice of the intent to use an insanity defense.  Dr. Emily Fallis's report is based on a single evaluation of the Defendant conducted on April 18, 2019.

The Notice states only:

> Defendant Donald Howard Conkright, through counsel and pursuant to Fed.R.Crim.Pro. 12.2(b) does hereby give notice that he intends to call Emily Fallis, Ph.D., a Clinical Psychologist, to testify as to the mental condition of Defendant at the time of the offense when this case proceeds to trial.

## B. Legal Standard – The Insanity Defense Reform Act

Under the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 17, 4241-4247, a defendant is entitled to a special verdict of not guilty by reason of insanity if, after the government proves all the elements of the charged offense beyond a reasonable doubt, the defendant then proves by clear and convincing evidence that, "as a result of a severe mental disease or defect, [he] was unable to appreciate the nature and quality or wrongfulness of his acts." 18 U.S.C. § 17. Federal Rule of Criminal Procedure 12.2(a) requires the Defendant to serve a pre-trial notice on the government of the defendant's intention to raise an insanity defense.  The Defendant has provided no such notice, and has only provided

notice of his intent to elicit expert testimony regarding his "mental condition." (DE No. 22).

Federal Rule of Evidence 704(b) prohibits an expert witness from opining on whether the defendant had or lacked a requisite mental state constituting an element of the crime charged, reserving such a decision for the trier of fact alone. This means "an expert may not opine on the defendant's intent." *United States v. Gillis*, 938 F.3d 1181, 1194 (11th Cir. 2019) (per curiam).   Rule 704(b) specifically states that: "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." Fed. R. Evid. 704(b).

It is well recognized that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a).   However, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). "An expert testifies 'with respect to' the mental state or condition of a defendant when an inference of the facts testified to is that the defendant had the mental state or condition constituting an element of the crime." *United States v. Alvarez*, 837 F.2d 1024, 1031 (11th Cir. 1988). Thus, an expert "cannot expressly state a conclusion that the defendant did or did not have the requisite intent"; nor can the expert "stat[e] an opinion as to the

defendant's state of mind at the time of the offense." *Id.*; *United States v. Jeri*, 869 F.3d 1247, 1266 (11th Cir. 2017).

A defense that negates specific intent based on psychiatric evidence must be narrowly constrained to avoid confusion of issues and misleading the jury. The Eleventh Circuit was careful to place strict limits on the kind of psychiatric evidence that could support a defense theory that negates specific intent. *United States v. Cameron*, 907 F. 2d 1051 (11th Cir. 1990). This is in part because the Eleventh Circuit has determined that through the Insanity Defense Reform Act, Congress intended to prohibit the presentation of evidence of mental disease or defect, short of insanity, to excuse conduct. *United States v. Westcott*, 83 F.3d 1354, 1358 (11th Cir. 1996).

In addition, before the Act's passage, a defendant could also assert a valid defense if he was unable to conform his conduct to the requirements of the law. *United States v. Freeman*, 804 F.2d 1574, 1576 (11th Cir. 1986). However, as the second sentence of the Act recites, Congress prohibited the use of "'non-insanity' psychiatric evidence that points toward 'exoneration or mitigation of an offense because of a defendant's supposed psychiatric compulsion or inability or failure to engage in normal reflection.'" *Cameron*, 907 F.2d at 1066.

Congress considered that such prohibited evidence would, if allowed to go to the jury, resurrect the former, broader version of the insanity defense "in the guise of showing some other affirmative defense, such as ... diminished responsibility ... and open the door, once again, to needlessly confusing psychiatric testimony." *Id.* (quoting S. Rep. No. 98–225, 98th Cong., 2d Sess. 229

(1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3411); *United States v. Puerto*, 392 F. App'x 692, 703 (11th Cir. 2010).

In *United States v. Cameron*, the Court noted that the use of psychiatric evidence to negate *mens rea* "may easily slide into wider usage that opens up the jury to theories of defenses more akin to justification." *Cameron*, 907 F.2d at 1067. Therefore, only psychiatric evidence which supports a "*legally acceptable* theory of lack of *mens rea*" should be admitted. *Id.* (emphasis in original). Psychiatric evidence is admissible to negate *mens rea* when the evidence focuses on the defendant's specific state of mind at the time the offense was committed. *Id.* Evidence that a defendant lacks the capacity to form *mens rea* is to be distinguished from evidence that the defendant actually lacked *mens rea*. *Id.* While the two may be logically related, only the latter is admissible to negate the *mens rea* element of an offense. *Id.; see also United States v. Westcott*, 83 F.3d 1354, 1358 (11th Cir. 1996).

**C. Analysis**

The Defendant's intended use of Dr. Fallis is likely to be classic justification and mitigation evidence, not true lack-of-mens-rea evidence. Neither the Notice nor Dr. Fallis's anticipated testimony satisfies Rules of Evidence 403 and 704, and the Notice and Dr. Fallis's anticipated testimony does not comport with the Insanity Defense Relief Act.

**1. Dr. Fallis should be precluded from presenting testimony pursuant to Federal Rule of Evidence 403**

Unless shown otherwise, relevant evidence is admissible. Fed. R. Evid. 402. Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence" and the fact is consequential to the action. Fed. R. Evid. 401. Even so, a district court "*may* exclude relevant evidence if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Dr. Fallis's anticipated testimony seriously risks confusing the issues and misleading jurors, which would result in extreme and unfair prejudice to the United States.

The Defendant should be precluded from calling Dr. Fallis at trial where her testimony serves only to provide evidence of impaired volitional control and will confuse and mislead the jury. When evaluating the admissibility of psychiatric evidence, the Eleventh Circuit has stated that courts should consider the following principles:

> (1) [p]sychiatric evidence of impaired volitional control or inability to reflect on the ultimate consequences of one's conduct is *inadmissible* whether offered to support an insanity defense or for any other purpose; (2) Congress intended to insure that the insanity defense is not improperly resurrected in the guise of showing some other affirmative defense such as that the defendant had a 'diminished responsibility' or some similarly asserted state of mind which would serve to *excuse* the offense; and (3) Congress was concerned about the danger that expert psychiatric testimony regarding inherently malleable psychological concepts can be misused at trial to mislead or confuse the jury.

*United States v. Cameron,* 907 F.2d 1051, 1061–62 (11th Cir.  1990).   If  the defendant  were  permitted  to  introduce  evidence  of  general  mental-health maladies in an attempt to negate the *mens rea* element of a specific intent crime, this would be little more than a backdoor entrance for a form of insanity defense excluded by Insanity Defense Reform Act.  *Cameron,* 907 F.2d at 1066. The jury, rather  than  focusing  on  whether  the  defendant  formed  the  requisite  specific intent,  could  be  misled  into  *excusing* criminal conduct  based  on  evidence  that the defendant suffered from mental abnormalities *not* excused by the statute.

The  Supreme  Court  recognized  that  this  was  a  risk  inherent  in  the insanity-and-*mens rea* dichotomy in *Clark v. Arizona,* 548 U.S. 735 (2006).  In *Clark*,  the  Supreme  Court  upheld  the  State  of  Arizona's  rule  categorically prohibiting  the  defense  from  introducing  evidence  of  mental  illness  to  negate the *mens rea* element of the offense.

In part, the Supreme Court stated that the State was justified in excluding such  evidence  based  on  the  "potential  of  mental-disease  evidence  to  mislead jurors ...  through  the  power  of  this  kind  of  evidence  to  suggest  that a defendant suffering from  a  recognized mental disease lacks cognitive,  moral, volitional, or other capacity, when that may not be the case at all.... [I]t is very easy  to  slide  from  evidence  that  an  individual  with  a  professionally  recognized mental  disease  is  very  different,  into  doubting  that  he  has  the  capacity  to form *mens rea,* whereas that doubt may not be justified." 126 S.Ct. at 2734-35.

While  the  Supreme  Court's  holding  does  not  affect  the  general admissibility of such evidence under the federal statute; it simply approves the

State of Arizona's rule excluding it in its state criminal proceedings. And, the Supreme Court's commentary on the tendency of mental-health evidence to mislead the jury speaks to the trial court's gatekeeping function in excluding psychiatric evidence not directly focused on the *mens rea* element of the charged offense.  Likewise in *Cameron,* the Eleventh Circuit stated that:

> Because psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury from focusing on the actual presence or absence of *mens rea,* and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification, ... district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, support a legally acceptable theory of lack of *mens rea.*

*Cameron,* 907 F.2d at 1067 (internal quotation marks omitted). "[S]uch evidence should be evaluated outside the presence of the jury." *Id.; see also Lawson*, 459 F. Supp. 2d at 1197–98.

Just this month, in an unpublished opinion in *United States v. Crawford*, citing Federal Rule of Evidence 403, the Eleventh Circuit found that the district court had properly excluded evidence of the defendant's mental state because "the dangers that it would confuse the issues and mislead the jury substantially outweighed any arguable probative value."  *Crawford*, No. 18-15060, 2020 WL 751818, at *2 (11th Cir. Feb. 14, 2020).

### 2. Dr. Fallis should not be permitted to state an opinion as to whether the Defendant lacked the *mens rea* requisite for the charged crimes pursuant to Federal Rule of Evidence 704.

Dr. Fallis' report and testimony directly reflects on the ultimate consequence of the Defendant's actions; she specifically states that the Defendant was "an easy person to con." (Report at p. 7). She further states that

"his vulnerability should not be underestimated . . .  He became the perfect mark for those engaged in fraud."  (*Id.* at p. 10).  Her testimony is impermissible, it serves only and entirely to excuse the Defendant's actions.

The Eleventh Circuit does permit evidence offered as 'psychiatric evidence to negate specific intent' when "such evidence focuses on the defendant's specific state of mind at the time of the charged offense." *Cameron*, 907 F.2d at 1067.  Psychiatric evidence tending to negate specific intent must show more than that the defendant was unable to reflect properly on, or control, her actions or motivations;  "a lack of conscious self-reflection does not mean a lack of intent." *Cameron,* 907 F.2d at 1066 n. 30.  Rather, the psychiatric evidence must focus on the defendant's specific state of mind at the time of the offense and show that, because of the defendant's mental condition, he did not have the  specific intent necessary to commit the crimes charged.  *Id.* at 1067.  Dr. Fallis's report contains a recitation of half-formed stories concerning the loss of the Defendant's cat in a Hurricane and a possible childhood abuse encounter that serve only to produce sympathy for the Defendant and do not provide context for the Defendant's specific state of mind in October and November of 2018.

 "Only in the rare case" will a defendant be so incapacitated by mental disease or defect so as to negate the *mens  rea* element  of  the crime.  *Cameron,* 907 F.2d at 1066.  Indeed, as Judge Becker stated on behalf of the Third Circuit Court of Appeals, "Only in the rare case . . . will *even a legally insane defendant* actually lack the   requisite  mens   rea  purely   because

of mental defect." *United States v. Pohlot,* 827 F.2d 889, 900 (3rd Cir. 1987) ("Mental illness rarely, if ever, renders a person incapable of understanding what he or she is doing.") (emphasis added); *see also United States v. Lawson*, 459 F. Supp. 2d 1192, 1196–97 (M.D. Ala. 2006).

Dr. Fallis's report does not rise to the level of showing that the Defendant was so incapacitated by mental disease or defect that he lacked the *mens rea* to commit the charged crimes. She found that he had average intellectual abilities, average verbal comprehension and average perceptual reasoning. (Report at p. 6). And, she determined that his processing speed also was average. (*Id.*).

### 3. Dr. Fallis should be prohibited from testifying as to wholly unrelated and inflammatory hearsay statements made by the Defendant.

If the Court does permit Dr. Fallis to testify for the Defendant, the United States requests that the Court warn the witness that her testimony must not invade the purview of the jury, and that she can only state facts from which the jury can infer whether the Defendant had the requisite state of mind without stating an ultimate opinion as to the Defendant's state of mind. She must "not expressly state this inference and allows the jury to draw its own conclusions from the testimony. *United States v. Augustin*, 661 F.3d 1105, 1123 (11th Cir. 2011) (per curiam); *see also United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008) (per curiam); *United States v. Russell*, No. 19-10560, 2020 WL 504860, at *2 (11th Cir. Jan. 31, 2020).

In addition, the witness should be precluded from testifying as to hearsay statements made by the Defendant and should be precluded from testifying as

to other aspects of her examination which are wholly unrelated to the charged crimes that serve no purpose other than to evoke sympathy for the Defendant. Specifically, the Defendant should be precluded from eliciting testimony regarding an alleged experience of sexual abuse as a child, his parent's history of alcohol use and purported abuse, his physical ailments, past relationships, and his experience with Hurricane Irma.   (Rep. at pp. 2-4).  Not only are these statements inadmissible hearsay, but they serve only to inflame the jury, are overly prejudicial and have no probative value.

### D. Conclusion

The United States of America, respectfully requests that the Court preclude the Defendant from introducing the testimony of Dr. Fallis during the trial, or in the alternative limit Dr. Fallis's testimony by precluding the introduction of hearsay statements, inflammatory and unsupported stories, and from stating an ultimate opinion on the Defendant's *mens rea*, which is an ultimate issue for the jury to determine.

Respectfully Submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:*/s/ Lindsey Lazopoulos Friedman*
Lindsey Lazopoulos Friedman
Florida Bar No. 091792
Yisel Valdes
Florida Special Bar No. A5502330
Assistant United States Attorneys
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9168
Fax: (305) 530-7976

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 21, 2020, the undersigned Assistant

United States Attorney electronically filed the foregoing document with the Clerk

of the Court using CM/ECF.

*/s/ Lindsey Lazopoulos Friedman*
LINDSEY LAZOPOULOS FRIEDMAN
Assistant United States Attorney
Florida Bar No. 091792